UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                          :
                                                :
DISTRIBUIDORA NACIONAL DE                       :
FRUTAS Y VEGETALES, INC.                        :        Case No. 06-003524-ESL
                                                :        Chapter 7
      Debtor(s)                                 :
                                                :
                                                :
_____               :

## OPINION AND ORDER

Before the court is a contested matter concerning the assignability of claims arising under the statutory trust created by the Perishable Agricultural Commodities Act, 7 U.S.C. § 499(a) et seq. ("PACA"). The chapter 7 debtor, Distribuidora Nacional de Frutas y Vegetales, Inc. ("Debtor" or "Distribuidora Nacional"), was a dealer of agricultural produce and is the PACA debtor in this case. Empacadora Hill Brothers ("Empacadora") is a PACA creditor. Seashore Fruit & Produce West, Inc. ("Seashore") is a PACA creditor. National Commercial Recovery, Inc. ("NCR"), is a commercial debt collection company. Seashore assigned its PACA claim against Debtor to NCR, and NCR filed a PACA claim against Debtor in this case as Seashore's assignee. ("NCR's claim") Empacadora opposes NCR's standing to claim as Seashore's assignee. This dispute concerns the assignability of PACA claims and NCR's right as Seashore's assignee to benefit from distributions from the PACA trust assets being held on Debtor's behalf by the chapter 7 trustee, Mr. Wilfredo Segarra Miranda. (the "trustee").

In opposition to NCR's claim, Empacadora filed a Motion and a Supplemental Motion In Opposition To Distribution To NCR. (Dkt. 61, 71) ("Empacadora's Motion").[1] NCR filed an initial

_____

[1] Matters of record shall be referred to as "Dkt. __".

brief and a Supplemental Brief in opposition to Empacadora's Motion. (Dkt. 65, 75) ("NCR's Opposition").[2] For the reasons discussed below, Empacadora's Motion is hereby denied. A hearing will be scheduled to determine what property sold or to be sold by the trustee is subject to the PACA trust.

Regarding the Debtor's PACA trust assets subject to distribution to the PACA creditors, we note that PACA creates a single, non-segregated floating trust for the benefit of all unpaid sellers and suppliers of produce or their agents, which can be commingled and includes all of Distribuidora Nacional's produce-related assets regardless of their origin. *See, In re Kornblum & Co., Inc.*, 81 F.3d 280, 285-86 (2nd Cir. 1996) (citations omitted). The trust arises with the first outstanding invoice, "and continues in existence until all of the outstanding beneficiaries have been paid in full." *Id*. at 286. Consequently, if a party wishes to exclude any of the Debtor's assets or proceeds of assets from inclusion in the PACA trust, said party must establish that: (1) the PACA trust did not exist when the assets were acquired; or (2) even though the PACA trust existed at the time, the assets were not acquired with trust assets or proceeds; or (3) although a PACA trust existed when the assets were acquired and these were acquired with trust assets or proceeds, the Debtor thereafter paid all unpaid sellers in full prior to the transactions involving the creditors in this case, thereby extinguishing the trust. *Id*. at 287.

***Background***

The Debtor is in chapter 7 and is subject to a PACA trust to pay off PACA creditors like Empacadora and Seashore, who sold it perishable agricultural produce as defined by PACA. The instant dispute arose when Empacadora filed a motion for an order directing the Debtor to turn over

---

[2] We note that NCR also does business under the name of "Blair Smith & Associates". (See Dkt. 65 at 13: Declaration of Ron Smith, President of NCR; Dkt. 75 at 7, same).

- 2 -

approximately $15,216 in funds which Empacadora claimed were subject to a PACA trust in its favor. (Dkt. 31). The trustee disputed Empacadora's assertion of a PACA trust in this case and opposed Empacadora's turnover motion. (Dkt. 45). The court set the matter for a hearing on May 21, 2007 to consider the PACA issue. (Dkt. 46). Prior to the scheduled hearing, another PACA creditor, New York Specialties Import & Export, Inc. ("NYSpec"), filed an opposition to Empacadora's turnover motion, claiming it, too, was a PACA creditor in the amount of $21,631. (Dkt. 48). The matter was heard on May 21, 2007, at which time the parties generally agreed that Debtor's assets are subject to a PACA trust, the proceeds of which must first be used to pay the PACA creditors. (Dkt. 50; Dkt. 52, transcript). The court granted the parties thirty days to file a stipulation outlining the procedures to deal with PACA claims and creditors in this case. (Id.). The parties filed the stipulation on June 13, 2007, providing for a 20-day objection period. (Dkt. 54). Among other matters, the stipulation provides for the issuance of a "Notice of Procedure" to file PACA claims, and that PACA claims must be supported by a sworn statement. (Id.). The stipulation was approved without objection by order entered on July 6, 2007. (Dkt. 56).

NCR's claim in the amount of $78,505 dollars was filed on July 24, 2007 as a motion for intervention under Bankruptcy Rule 2018(a) and Fed.R.Civ.P. Rule 24, respectively. (Dkt. 58). Empacadora's Motion objecting to NCR's claim on the basis that PACA claims cannot be assigned was filed on December 12, 2007. (Dkt. 61). Empacadora's Motion was granted unopposed. (Dkt. 62). NCR moved to vacate the Dkt. 61 order pursuant to Federal Rule 60(b) because it did not receive timely notice of Empacadora's Motion. (Dkt. 65).[3] The court granted NCR's Rule 60(b) motion to vacate and scheduled the matter for a hearing to be held on April 10, 2008 to hear the

---

[3] Dkt. 65, Exh. B, is NCR's initial brief on the issue of assignability filed in opposition to Empacadora's Motion. The brief was attached as "Exhibit B" to NCR's Rule 60 motion to reconsider and vacate the Dkt. 62 order which granted Empacadora's Motion unopposed.

- 3 -

parties' positions on the issue of assignability of PACA claims. (Dkt. 67). At the April 10 hearing, Empacadora raised a new argument in opposition to NCR's claim, basically assailing the validity of the assignment agreement between Seashore and NCR. (Dkt. 73, transcript of April 10, 2008 hearing). The court ordered the parties to file supplemental briefs addressing Empacadora's new argument regarding the validity of the assignment. (Id.). The parties complied (Dkt. 71 and 75), and the court took the matter under advisement.

The supplemental brief to Empacadora's Motion raises two issues. First, Empacadora questions the validity of the assignment. Empacadora implies that NCR's failure to include the assignment's terms and conditions sheet somehow runs afoul of the requirements for a valid assignment agreement. According to Empacadora, the terms and conditions of the assignment are "essential [to] determine the validity of the assignment" and to ascertain whether the assignment "completely and irrevocably" vested title to the claim in the assignee, NCR. (Dkt. 71 ¶ 12-13). Furthermore, Empacadora points out that the assignment lists two "individuals" named "Carlos Fidalgo" and "Jose Fidalgo", doing business as "District (sic) Nacional de Frutas" and "Fidalgo Inc.," which "do not correspond" to the Debtor's name–Distribuidora Nacional. (Dkt. 71 ¶ 14). The second issue raised by Empacadora's Motion is that PACA claims cannot be assigned. (Dkt. 71 ¶¶ 12-25; Dkt. 61).

***Discussion***

The validity and enforceability of the assignment between NCR and Seashore against Debtor is contingent upon two issues. First, the court must determine what has been assigned in order to make certain that the assignee is the real party in interest with regard to the claim being pursued in the action. Second, the court must make sure that a valid assignment has been made, by referring to the substantive law governing the assignability of the chose in action. *See, Celta Agencies, Inc., v.*

- 4 -

*Denizsiliksanayi Ve Ticaaret, A.S., et al.*, 396 F.Supp.2d 106, 110 (D.P.R. 2005) (citing 6A Wright & Miller, *Federal Prac. & Proc.* § 1545 (2d ed. 1990) at 349-50).

In this case, we find that the assignment from Seashore to NCR sufficiently identifies the PACA claim that was assigned and the party responsible for payment, that is, Distribuidora Nacional, and the agreement complies with the legal requirements for such contracts under Puerto Rico law.

***Validity of the assignment agreement***

NCR argues for the application of California law to the instant assignment. (Dkt. 65 at 11-12). "Generally, the law of the place where an assignment is made governs its validity." *See* 6A C.J.S. *Assignments* § 59 (Thompson/West 2008) (citations omitted). However, NCR's claim is against a debtor in chapter 7 bankruptcy in Puerto Rico with assets to be distributed in this state. "In determining whether an assignment is valid as against third persons, the law of the place where the property is found, or where the debtor of the assignor is domiciled, governs with respect to the giving of notice, or the recording of the assignment, or taking possession of the property thereunder." *Id.* (citation omitted). Debtor is domiciled in Puerto Rico, and the property subject to the assignment is found in Puerto Rico. Furthermore, performance under the assignment will take place in Puerto Rico. Therefore, "the law of the place of performance[, Puerto Rico,] will control in determining the validity of the assignment." *Id.* (citation omitted).[4]

Contrary to Empacadora's assertions, the terms and conditions of the assignment for collection to NCR do not invalidate it or affect NCR's standing to pursue Seashore's PACA claim

---

[4] At any rate, upon reviewing the authorities cited in NCR's Opposition (Dkt. 65), we are satisfied that the issue of the validity of the instant assignment would be resolved in the same manner under Puerto Rico or California law.

- 5 -

against Debtor.[5] NCR's Opposition includes a copy of the one page assignment with Seashore (Dkt. 65 at 14, Exh. A), and the terms and conditions sheet governing the assignment. (Dkt. 75 at 8, Exhibit A). Both documents indicate that the assignment is for "collection" of debt. The assignment agreement discloses that Seashore assigned and transferred its "interest" in the claim against Debtor to NCR on a contingency basis. Seashore will pay a straight $2,095 fee to NCR for its debt collection services plus a 25% contingency fee from any amounts collected; NCR must account and remit to Seashore its corresponding (75%) share of any collection. (Dkt. 65, Exh. A; Dkt. 75, Exh. A ¶ 1).

Under the assignment, NCR is Seashore's agent for collection. "An assignment may be made either to expedite the collection of a claim, or to transfer ownership of it or of a security interest in it. If the assignee is to account for the proceeds to the assignor, he is normally the latter's agent." Restatement (Second) of Agency § 14G, *Agent or Assignee*, Comment *"a"* (Thompson/West 2008). The assignment unqualifiedly transferred Seashore's "interest" in the claim to NCR. (Dkt. 65, Exh. A). The terms and conditions sheet makes it clear that the assignment for collection is for an "indefinite term" (Dkt. 75, Exh. A ¶ 3); that assignee (NCR) may abandon the collection effort at its sole discretion (Id. at ¶ 4); and that Seashore will not interfere with the assignee's collection efforts (Id.). As such, Seashore relinquished title and control over the claim but retained equitable ownership over a certain percentage of it; the realization of Seashore's equitable interest being contingent upon the fruits of NCR's collection efforts.

An assignment passes title to the assignee such that the law will recognize him as the owner of a claim and the real party in interest to bring suit under Fed.R.Civ.P. Rule 17(a). 6A Wright & Miller, *Fed. Prac. & Proc. Civ.2d* § 1545 (Thompson/West 2008) (citations omitted). An agent for

---

[5] We note that before the Debtor filed for chapter 7 and prior to assigning its claim to NCR, Seashore had filed a civil action in state court against Debtor in Los Angeles County, California, Case # BC356399. That case is stayed due to Debtor's chapter 7 filing. (Dkt. 65 at 10, Exh. B ¶ 4).

collection with an assigned title to the claim is the real party in interest, even though he must account to the assignor for any recovery. *Id.* (citations omitted). Thus, this assignment for collection transferred title to Seashore's PACA claim to NCR and gave the assignee full authority to appear in this action in its own name. *See APCC Services, Inc. v. A.T.&T. Corp.*, 281 F.Supp.2d 41, 44-47 (D.D.C. 2003), *affirmed and remanded*, 489 F.3d 1249 (D.C.Cir. 2007) (holding that assignees for collection had legal title and standing to bring claims in their own names arising under the federal Telecommunications Act and surveying U.S. Supreme Court precedents reaffirming the rule that assignees can bring suits as real parties in interest).

In summary, it is settled that "a valid assignment confers upon the assignee standing to sue in place of the assignor." 6A C.J.S. *Assignments* at § 125. The rule that an assignee has standing to claim in the name and place of the assignor applies to collection agencies such as NCR. *Id.* at f/n 1 (citation omitted); *APPC Services*, 281 F.Supp.2d at 46 (an assignee for collection holds legal title to the claim and has standing to sue even if he must account to the assignor for the proceeds recovered in the action) (citations omitted).

Also, "[a]ssignments are generally subject to the same prerequisites for validity as other contracts, including mutuality of assent, proper parties with the capacity to contract, consideration, and legal subject matter." 6A C.J.S. *Assignments* at § 57. Absent statutory restrictions, a valid assignment need not comport with prescribed forms or phraseology in order to be valid; any words or acts which fairly indicate the intent to create an assignment will do. *Id.* at § 58 (citations omitted); *see, also Celta Agencies,* 396 F.Supp.2d at 110 ("The validity of an assignment agreement is determined by substantive law... [U]nder Puerto Rico [law] there are no formal requirements to an assignment...") (internal quotations and citations omitted); *PRAMCO, LLC v. Torres*, 286 F.Supp.2d 164, 172 (D.P.R. 2003) (the state's substantive law determines the validity of an assignment; the

- 7 -

parties are free to make such an assignment as they deem advisable, provided that its subject matter, terms or conditions are not contrary to law, morals, or public order) (internal quotation omitted) (citation omitted). The subject matter of the assignment should be described with enough particularity to render it capable of identification, but not more than is necessary after considering the attendant and surrounding circumstances of the agreement. 6A C.J.S. *Assignments* at § 60.

Under Puerto Rico law, assignments of debt are valid contracts whereby the assignor transfers title to the claim to the assignee, who may enforce it against the debtor. *See* 31 L.P.R.A. § 3941, *Effects of assignment of rights against third parties*; *The Comm. Ins. Co. v. Cia de Fomento Ind.*, 123 P.R.Dec. 150 (1989). An assignment of the right to collect a credit in litigation need not be written or recorded in a public document or instrument. *Pereira v. IBEC*, 95 P.R.Dec. 28 (1967); *Celta Agencies*, 396 F.Supp.2d at 110 (assignments need not be in writing because they are not listed in the list of contracts that must appear in a public instrument pursuant to 31 L.P.R.A. § 3453). The debtor's assent to the assignment is not required; it shall be sufficient that the debtor be made aware of the assignment for it to be enforceable against him, and by paying the assignee, the debtor frees himself from the obligation to pay. *See, generally Camara Insular v. Anadon*, 83 P.R.Dec. 374 (1961); *Morales v. Blanco*, 15 P.R.Dec. 406 (1915); *PRAMCO,* 286 F.Supp.2d at 172 (absent stipulations to the contrary, Puerto Rico law considers that all rights acquired by virtue of an obligation are freely transmissible and the assignment may be accomplished without consent from the debtor) (citations omitted). Seashore's assignment to NCR fulfills the foregoing legal prerequisites for validity under Puerto Rico law.

Empacadora also implies that the assignment is invalid because the Debtor is not properly identified. Specifically, Empacadora claims that the assignment identifies several possible debtors with varying names. (Dkt. 71 ¶ 14). After reviewing the record concerning NCR's claim, the court

- 8 -

concludes that the debtor of the said claim is properly identified.

In its petition, Distribuidora Nacional listed its mailing address as P.O. Box 3921, Guaynabo, P.R. (Dkt. 1 at 1). Under "other names" used by Debtor in the past 8 years, Debtor informed "C.J. Fidalgo Produce Company". (Id.) The assignment names "Carlos" and "Jose" "Fidalgo", "District (sic) Nacional de Frutas" and "Fidalgo Inc." as persons or entities that may have an interest in Debtor or who may be liable for NCR's claim. (Dkt. 65 at 14, Exh. A). The name "C.J. Fidalgo Produce Company" reported in Debtor's petition coincides with the "C"arlos and "J"ose "Fidalgo" and with the "Fidalgo, Inc." named in the assignment; and "District (sic) Nacional de Frutas" clearly refers to Debtor, albeit with a misspelled word. Also, Schedule F of Debtor's petition identifies Seashore as a creditor in bankruptcy for $83,172. (Dkt. 1 at 24). The documents, invoices and declarations submitted in support of NCR's amended proof of claim in bankruptcy, claim # 15, clearly and unambiguously identify Seashore as the creditor and Distribuidora Nacional as the debtor.[6] NCR's amended proof of claim # 15 is for $84,180 of which $78,505 allegedly qualifies for PACA priority. These amounts are close to Seashore's claim listed by Debtor in Schedule F. Furthermore, amended proof of claim # 15 is supported by invoices for produce sold to "Distribuidora Nacional", with the address listed in Debtor's petition at P.O. Box 3291 in Guaynabo, P.R. Finally, Debtor has not objected to or denied NCR's claim in this action or its amended proof of claim in bankruptcy, or the right of Seashore to assign the claim.

Based on the preceding analysis, we find that the documents, facts and attendant

---

[6] Empacadora overlooks the fact that the assignment indicates that Debtor's name includes the names of "subsequently discovered party(ies)" with an interest in Debtor or who may be liable for NCR's claim. (Dkt. 65, Exh. A at "*"). In fact Empacadora's own proof of claim # 14 is almost entirely supported by commercial documents and invoices for produce sold and delivered to "Carlos" or "Jose" "Fidalgo" at a place in Bayamon, Puerto Rico, and not to "Distribuidora Nacional" in Guaynabo. The same is true for proofs of claim # 13 and # 20 submitted by PACA creditors Carribean Produce Exchange, Inc. and NYSpec, respectively.

circumstances surrounding NCR's claim are sufficient to identify the parties to the assignment and their intent to enter into an assignment agreement, the Debtor in the assignment and the PACA claim that was assigned. Consequently, we conclude that this assignment is valid and enforceable under Puerto Rico law.

***Assignability of PACA claims***

Empacadora argues that PACA claims arise from fiduciary relationships based on personal trust or confidence and, together with PACA's silence on assignability, makes assignment contrary to the purpose of the trust. Therefore, PACA claims cannot be assigned. (Dkt. 71 ¶¶ 15, 24-25). In support of its contentions, Empacadora cites to Colorado state law on trust funds concerning contractors and regarding the non-assignability of wrongful death actions. In further support, Empacadora references two U.S. Supreme Court cases concerning the non-assignability of military benefits. (Id. at ¶¶ 16-21). We fail to see the precedential value of the cases cited by Empacadora over issues arising in the context of PACA trust fund disputes.

As NCR points out in its well-supported Opposition to Empacadora's Motion, rarely will the law or public policy be offended when parties freely assign contract rights. (Dkt. 65 at 11-12) (citing California and federal law on assignments). "Generally, an assignment is valid where it violates no statute, public policy, or constitutional provision..." 6A C.J.S. *Assignments* at § 69. PACA claims arise from a federal statute which is silent on assignability. "In addition to the two general antiassignment statutes [applied to claims against the Unites States], there are a number of federal statutes referring to the assignability of specific claims or types of claims," none of which refer to PACA claims. 6 Am. Jur. 2d *Assignments* § 95 (Thompson/West 2008) (listing unassignable federal statutory claims) (citations omitted).

Finally, the regulations promulgated by the Secretary of Agriculture to implement the PACA

- 10 -

trust further support that PACA claims can be assigned. The regulations permit sellers and suppliers of produce or their agents, as PACA beneficiaries, to appoint "licensees" to represent them in their dealings with merchants, dealers or brokers of produce–PACA debtors. *See*, 7 C.F.R. § 46.46(c)(2) (Thompson/West 2008). The text of this regulation interchangeably refers to the "licensees" and "agents", and charges them with strict fiduciary duties to preserve the rights of their "principals" as PACA beneficiaries. These fiduciary duties include the responsibility to comply with the requirement of § 46.46(f) to properly and timely file the written notice of intent to preserve benefits under the trust. A licensee may also be employed by its principal as a "collect and remit" agent under § 46.46(c)(2). Any "collect and remit" agent is liable to its principal for failure to preserve the principal's rights to trust benefits. *Id*. The language of § 46.46(c)(2) makes it reasonable to conclude that PACA claims can be assigned to agents for collection such as NCR who must remit any payments back to Seashore, minus its fee. Therefore, we agree with NCR that the assignment of PACA claims does not contravene the fundamental policy of PACA, which is to ensure the source and priority of payments due to all sellers and suppliers of perishable agricultural commodities with claims against merchants and dealers such as Debtor. *Kornblum*, 81 F.3d at 284 (the PACA debtor must hold the produce and its derivatives or proceeds in trust for the unpaid beneficiary, who is entitled to claim ahead of even creditors holding security interests in the trust property).

Therefore, after careful consideration of the parties' arguments for, and against, distribution to NCR, we find that the PACA statute, the case law construing and applying its provisions or the PACA regulations, does not preclude the assignment of Seashore's claim against Debtor to NCR, whether for collection purposes only or as an outright transfer for value.

***Conclusion***

In conclusion, we hold that PACA claims are assignable. Empacadora's Motion does not

state any legal grounds or policy reasons why NCR's claim should not proceed. We see no reason to invalidate the assignment and deny NCR's claim, thus depriving NCR and Seashore of the mutual benefits of their contractual bargain. For all the foregoing reasons, it is ordered that Empacadora's Supplemental Motion In Opposition To Distribution To NCR be and is hereby, denied.

A one day evidentiary hearing is scheduled for September 15, 2008, at 9:30 a.m., to consider the scope and extent of the PACA trust in this case and if any property sold or to be sold by the trustee is subject to the PACA trust. The parties shall file proposed findings of fact and conclusions of law ten (10) days prior to the hearing.

SO ORDERED.

San Juan, Puerto Rico, this 25th day of June, 2008.

_____
ENRIQUE S. LAMOUTTE
U.S. Bankruptcy Judge

- 12 -